AMTOWER v WILLIAM C RONEY & CO (ON REMAND)

Docket No. 211717. Submitted May 19, 1998, at Lansing. Decided October 16, 1998, at 9:10 A.M.

Franklin Amtower and others who had invested in securities following the advice of William C. Roney & Co., a limited partnership, brought an action in the Wayne Circuit Court against Roney, alleging that Roney had misrepresented pertinent facts regarding the investments. Roney moved for summary disposition, seeking dismissal of the action or an order to compel arbitration of the dispute on the basis of customer agreements executed by the plaintiffs providing that any claims against Roney arising from the investments must be submitted to binding arbitration within one year after the cause of action accrued. Roney argued that the cause of action accrued in October 1990. The plaintiffs argued that it accrued in May 1991 and that the arbitration agreement was invalid. The court, Michael J. Callahan, J., concluded that the arbitration agreement was valid and that the cause of action accrued in October 1990. The court entered an order dismissing the action. The plaintiffs appealed. The Court of Appeals, in an unpublished opinion per curiam, issued February 11, 1997 (Docket No. 165777), affirmed the determination that the claims are arbitrable and reversed and remanded for arbitration, holding that procedural issues, such as the timeliness of an otherwise arbitrable claim, must be determined by the arbitrator, not the court. The defendant sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for the limited purpose of considering whether the Federal Arbitration Act (FAA), 9 USC 1 *et seq.*, requires that a court, instead of arbitrators, decide the issue of the timeliness of the plaintiffs' claims. 457 Mich 864 (1998).

On remand, the Court of Appeals *held*:

1. The FAA applies because this dispute arises out of contracts involving interstate commerce.

2. Because the parties broadly agreed to arbitrate the merits of any controversy arising between them, federal law requires that an arbitrator, rather than the trial court, must decide the procedural issue whether the plaintiffs' claims were timely. Michigan and fed-

eral law provides that arbitrators, rather than courts, should decide
the application of such potential defenses to arbitration as contrac-
tual limitation periods, statutes of limitation, and the doctrine of
laches.

3. Because parties may provide in an arbitration agreement that
certain issues are to be determined by a court, the determination
whether the issue of timeliness must be decided by an arbitrator or
a court is a question of contract interpretation. Any ambiguity con-
cerning whether a specific issue falls within the scope of arbitra-
tion must be resolved in favor of submitting the question to the
arbitrator for resolution. When the contract provides for the arbi-
tration of some issues, it is likely that the parties gave at least
some thought to the scope of arbitration. Therefore, the law insists
upon clarity before concluding that the parties did not want to arbi-
trate a related matter.

4. The broadly worded arbitration clauses, covering any contro-
versy arising between the parties, indicate that the arbitrator must
decide the timeliness issue. The contractual language does not
unmistakably remove the timeliness issue from the purview of the
arbitrator. The matter must be reversed and remanded to the trial
court with instructions to grant the defendant's motion to compel
arbitration.

Reversed and remanded.

1. ARBITRATION — FEDERAL ARBITRATION ACT.

The Federal Arbitration Act applies to disputes that arise out of con-
tracts involving interstate commerce; the Supremacy Clause of the
United States Constitution requires state courts to enforce the sub-
stantive provisions of the Federal Arbitration Act (US Const, art VI,
cl 2; 9 USC 1 *et seq*.).

2. ARBITRATION — PROCEDURAL QUESTIONS — LIMITATION OF ACTIONS.

Under federal law, procedural questions, such as the timeliness of a
claim, that grow out of a dispute and bear on its final disposition
should be left to the arbitrator once it is determined that the par-
ties are obligated to submit the subject matter of a dispute to arbi-
tration; Michigan's strong policy favoring arbitration is in accord
with federal precedent; federal and Michigan law also provides that
arbitrators, rather than courts, should decide the application of
such potential defenses to arbitration as contractual limitation peri-
ods, statutes of limitation, and the doctrine of laches.

3. ARBITRATION — CONTRACTS — SCOPE OF AGREEMENT TO ARBITRATE.

The parties to an arbitration agreement may provide in the agreement
that certain issues are to be determined by a court instead of an

arbitrator; courts should ordinarily apply basic state-law principles that govern the formation of contracts in determining whether the parties agreed to arbitrate a certain matter; any ambiguity concerning whether a specific issue falls within the scope of arbitration, such as whether a claim is timely, must be resolved in favor of submitting the question to the arbitrator for resolution; because the parties to a contract that provides for the arbitration of some issues likely gave some thought to the scope of arbitration, the law insists upon clarity before concluding that the parties did not want to arbitrate a related matter.

*Fieger, Fieger & Schwartz* (by *Geoffrey N. Fieger* and *Rebecca S. Eaton*), for the plaintiffs.

*Honigman Miller Schwartz and Cohn* (by *Raymond W. Henney* and *Steven M. Ribiat*), for the defendant.

ON REMAND

Before: CORRIGAN, C.J., and HOLBROOK, JR., and YOUNG, JR., JJ.

YOUNG, JR., J. This case involves claims arising out of infelicitous securities investments in which defendant advised plaintiffs to participate. As a part of these investment transactions, plaintiffs executed customer agreements providing that any claims against defendant arising from the investments must be submitted to binding arbitration within one year of the accrual of the cause of action.

Plaintiffs sued and defendant moved to dismiss plaintiffs' claims on the basis that plaintiffs had agreed to arbitrate any such disputes and that, under the arbitration provisions, plaintiffs' claims were barred by the contractual limitation period. The trial court concluded that plaintiffs' claims were barred by the contractual limitation period and dismissed plain-

tiffs' action. The plaintiffs appealed. Relying on Michigan precedent, *Bennett v Shearson Lehman-American Express, Inc*, 168 Mich App 80, 83; 423 NW2d 911 (1987), we affirmed the determination that the plaintiffs' claims are arbitrable and reversed and remanded for arbitration, holding that procedural issues, such as the timeliness of an otherwise arbitrable claim, must be determined by the arbitrator, not the court. *Amtower v William C Roney & Co*, unpublished opinion per curiam of the Court of Appeals, issued February 11, 1997 (Docket No. 165777).

This case has now returned to us[1] on remand from the Supreme Court for the limited purpose of considering "whether the Federal Arbitration Act [FAA], 9 USC 1 *et seq.*, requires that a court instead of arbitrators decide the issue of the timeliness of plaintiffs' claims." 457 Mich 864 (1998). We hold that it does not, and we again conclude that the timeliness of plaintiffs' claims is a question to be decided by the arbitrator rather than the trial court. Accordingly, we reverse and remand this matter for further proceedings.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

For completeness, we repeat the facts of this case as set forth in our prior unpublished opinion:

> Following the advice of defendant, an investment adviser, plaintiffs invested in a limited partnership known as the Certified Historic Income Properties VII Limited Partnership (CHIPS VII). Twelve of the plaintiffs, Franklin Amtower, Richard Bumb, Richard Cummings, Thomas DeAgostino,

---

[1] Upon remand, Judge HOLBROOK, JR., was substituted for (now) Justice CLIFFORD W. TAYLOR.

David Farber, Jeffrey Farber, Carl Freeman, Patricia Hutchinson, Gary Lambert, Paul Tatseos, Barry Miller and John Christ, executed customer agreements with defendant. These agreements provided that any claims against defendant arising out of the CHIPS VII transaction would be submitted to binding arbitration within one year of the accrual of the cause of action.

Plaintiffs brought this action pursuant to the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.* Plaintiffs alleged that defendant misrepresented pertinent facts regarding the integrity of the CHIPS VII investment.[2] Defendant moved for summary disposition against Amtower, Bumb, Cummings, DeAgostino, David and Jeffrey Farber, Freeman, Hutchinson, Lambert, Tatseos, Miller and Christ, arguing for outright dismissal or, alternatively, for an order to compel arbitration. Defendant argued that the arbitration agreement precluded these plaintiffs from obtaining relief from the courts. Defendant also argued that the action had been brought more than one year from the time the cause of action accrued. Defendant argued that the cause of action accrued in October, 1990, when plaintiffs were notified that the CHIPS VII investments were failing. Plaintiffs argued in response that the arbitration agreement was invalid because they had not made a knowledgeable waiver of rights. Plaintiffs also argued that the cause of action did not accrue until May 8, 1991, when they learned that the CHIPS VII general partner had misappropriated funds.

The trial court concluded that the arbitration agreement was valid and that the cause of action accrued in October, 1990. The trial court granted defendant's summary disposition motion. The trial court later denied plaintiff[s'] motion for relief from order and for reconsideration pursuant to MCR 2.612.

---

[2] Plaintiffs also alleged claims of breach of fiduciary duty, breach of contract, and negligence.

On appeal, plaintiffs abandoned any claim that the arbitration agreements were invalid and argued only that the trial court erred in determining that their cause of action accrued in October 1990. Defendant argued that the court correctly made this determination. Although not an issue raised by the parties, we held in our prior opinion that the arbitrator, not the trial court, should decide whether plaintiffs' claims were barred by the contractual one-year limitation period:

> Although the existence of a contract to arbitrate and its enforceability is a judicial question that cannot be decided by an arbitrator, *City of Huntington Woods v Ajax Paving* [*Industries, Inc (After Remand)*], 196 Mich App 71, 74; 492 NW2d 463 (1992), procedural matters arising out of an arbitrable dispute are for the arbitrator, and not the court, to determine. *Bennett v Shearson Lehman-American Express, Inc*, 168 Mich App 80, 83; 423 NW2d 911 (1987). As such, the timeliness of bringing of an arbitration proceeding is a procedural issue to be determined by the arbitrator rather than the courts. *Id.*; see also *Nielsen v Barnett*, 440 Mich 1, 10; 485 NW2d 666 (1992). Therefore, the trial court erred in making a determination regarding when plaintiffs' cause of action accrued.

On the basis of defendant's argument in seeking leave to appeal to the Supreme Court, that the FAA preempted state law and that federal law required the court rather than an arbitrator to determine the question of timeliness, the Supreme Court, in lieu of granting leave to appeal, remanded the matter for further consideration.[3]

---

[3] Although defendant mentioned the FAA and cited various federal cases in arguing before this Court that the trial court properly calculated the accrual date of plaintiffs' claims, defendant did not, until it filed briefs in

II. ANALYSIS

Now that it has made its legal position more clear, we agree with defendant that the FAA applies to this dispute, which dispute unquestionably arises out of contracts involving interstate commerce. *Allied-Bruce Terminix Cos, Inc v Dobson*, 513 US 265; 115 S Ct 834; 130 L Ed 2d 753 (1995). State courts are bound, under the Supremacy Clause, US Const, art VI, cl 2, to enforce the FAA's substantive provisions. *Ultracashmere House, Ltd v Meyer*, 664 F2d 1176, 1180 (CA 11, 1981). However, as more fully explained below, because the parties broadly agreed to arbitrate the merits of any controversy arising between them, we conclude that federal law requires that an

A. GENERAL FEDERAL RULE—TIMELINESS ISSUES AS QUESTIONS OF "PROCEDURAL ARBITRABILITY"

In *John Wiley & Sons, Inc v Livingston*, 376 US 543, 557-558; 84 S Ct 909; 11 L Ed 2d 898 (1964), the Supreme Court held that "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Since that decision, an overwhelming majority of fed-

the Supreme Court, assert that the matter was actually governed by the FAA. We therefore addressed the arbitration question relying on Michigan precedent. See *Bennett, supra* at 83.

In any event, we note that *Bennett*, although a Michigan case, is entirely founded on federal law. *Bennett* can be traced directly back to our Supreme Court's decision in *Brown v Holton Public Schools*, 397 Mich 71, 73-74; 243 NW2d 255 (1976), which, in turn, relied on a series of federal cases. Thus, as a practical matter, whether the issue at hand (who, as between arbitrator or court, should determine a timeliness question) is addressed under Michigan or federal law, the legal rule and result is the same.

eral appellate circuits (including the Sixth Circuit Court of Appeals) considering the issue have determined that timeliness of a claim is a procedural matter and, therefore, within the arbitrator's jurisdiction.[4] Michigan, which has developed its own strong policy favoring arbitration on the basis of federal precedent,[5] is in accord. Michigan law also provides that arbitrators, rather than courts, should decide the application of such potential defenses to arbitration as contractual limitation periods, statutes of limitation, and the doctrine of laches. See, e.g., *Brown v Holton Public Schools*, 397 Mich 71, 73-74; 243 NW2d 255 (1976); *Iron Co v Sundberg, Carolson & Associates, Inc*, 222 Mich App 120, 126; 564 NW2d 78 (1997); *Bennett, supra* at 83.

### B. PARTIES' INTENT TO RESERVE TIMELINESS ISSUES FOR THE COURT

Notwithstanding the general federal rule, it is equally clear that the parties to an arbitration agreement can provide that certain issues be determined

---

[4] See, e.g., *Glass v Kidder Peabody & Co, Inc*, 114 F3d 446, 455 (CA 4, 1997); *United Rubber, Cork, Linoleum, & Plastic Workers of America, AFL-CIO, CLU, Local 164 v Pirelli Armstrong Tire Corp*, 104 F3d 181, 184 (CA 8, 1997); *Local 285, Service Employees Int'l Union, AFL-CIO v Nonotuck Resource Associates, Inc*, 64 F3d 735, 739 (CA 1, 1995); *Denhardt v Trailways, Inc*, 767 F2d 687, 689-690 (CA 10, 1995); *Nursing Home & Hosp Union No 434 AFL-CIO-LDIU v Sky Vue Terrace, Inc*, 759 F2d 1094, 1097 (CA 3, 1985); *Commerce Park at DFW Freeport v Mardian Constr Co*, 729 F2d 334, 339, n 5 (CA 5, 1984); *Belke v Merrill Lynch, Pierce, Fenner & Smith*, 693 F2d 1023, 1027-1028 (CA 11, 1982); *O'Neel v Nat'l Ass'n of Securities Dealers, Inc*, 667 F2d 804, 807 (CA 9, 1982); *Conticommodity Services Inc v Philipp & Lion*, 613 F2d 1222, 1227 (CA 2, 1980); *Chambers v Beaunit Corp*, 404 F2d 128, 131 (CA 6, 1968).

[5] See *Detroit v A W Kutsche & Co*, 309 Mich 700, 703; 16 NW2d 128 (1944). In Michigan, arbitration clauses are to be liberally construed with any doubts to be resolved in favor of arbitration. *Chippewa Valley Schools v Hill*, 62 Mich App 116, 120; 233 NW2d 208 (1975).

by the court if they so specify in their contract. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed so to submit.' " *AT & T Technologies, Inc v Communications Workers of America*, 475 US 643, 648; 106 S Ct 1415; 89 L Ed 2d 648 (1986) (citations omitted). Thus, "the basic objective in this area is . . . to ensure that commercial arbitration agreements, like other contracts, 'are enforced according to their terms,' and according to the intentions of the parties." *First Options of Chicago, Inc v Kaplan*, 514 US 938, 947; 115 S Ct 1920; 131 L Ed 2d 985 (1995) (citations omitted).

Consequently, the determination whether the issue of timeliness must be decided by the arbitrator or a court inexorably becomes a question of contract interpretation. When deciding whether the parties agreed to arbitrate a certain matter, courts should ordinarily apply basic state-law principles that govern the formation of contracts. *Id.* at 944. " 'The cardinal rule in the interpretation of contracts is *to ascertain the intention of the parties.*' " *Goodwin, Inc v Orson E Coe Pontiac, Inc*, 392 Mich 195, 209; 220 NW2d 664 (1974), quoting *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924) (emphasis in *Goodwin*). "Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning." *Haywood v Fowler*, 190 Mich App 253, 258; 475 NW2d 458 (1991).

However, consistent with the strong federal policy promoting arbitration, any ambiguity concerning whether a specific issue falls within the scope of arbitration, such as whether a claim is timely, must be resolved in favor of submitting the question to the

arbitrator for resolution. See *AT & T Technologies,* *supra* at 650. In other words, there is a presumption of arbitrability " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.,* quoting *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582-583; 80 S Ct 1347; 4 L Ed 2d 1409 (1960).[6] In *First Options, supra* at 945, the Court explained that when the parties have a contract that provides for arbitration of some issues, "the parties likely gave at least some thought to the scope of arbitration." Therefore, the law "insist[s] upon clarity before concluding that the parties did not want to arbitrate a related matter." *Id.*

With these principles in mind, we turn to the arbitration provisions at issue in this case. Most of the customer agreements contain the following language related to arbitration:

> Any and all controversies which may arise between us . . . concerning, arising out of, or relating to, your business, my account(s), transactions with you for me, any other transactions, this agreement or the construction, performance or breach of this or any other agreement between us . . . shall be submitted to, and settled and determined by, binding arbitration . . . . Arbitration must be commenced within one year after the cause of such action accrued by service upon the other of a written demand for arbitration

---

[6] Although the general principles to be applied in construing arbitration agreements originated in the labor context, we note that the United States Supreme Court has since applied them in a commercial arbitration case. See *First Options, supra;* see also *PaineWebber Inc v Elahi,* 87 F3d 589, 594, n 6 (CA 1, 1996) (recognizing that principles derived from labor arbitration cases may be applied in a commercial setting).

or a written notice of intention to arbitrate, naming therein the arbitration tribunal.

Some of the agreements used slightly different language, but with the same import:

It is agreed that any controversy between us arising out of . . . this agreement shall be submitted to arbitration . . . . Arbitration must be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, naming therein the arbitration tribunal.

Particularly when considered in light of the federal presumption in favor of arbitrability, we believe that these broadly worded arbitration clauses, covering as they do *any* controversy arising between the parties, indicate that the arbitrator must decide the timeliness issue. This conclusion makes sense when one considers that the timeliness issue itself requires a determination of often-disputed, as here, fact questions regarding when "the cause of action accrued." Federal precedent makes it clear that, ordinarily, this is a question that the arbitrator is in a better position to decide. In *John Wiley & Sons, supra* at 556-557, the Court explained:

Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. . . .

Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

We also believe, as a general rule, that submitting procedural matters, such as timeliness, to the arbitrator is consistent with the United States Supreme Court's admonition that in deciding whether the parties have agreed to submit a particular grievance to arbitration, "a court is not to rule on the potential merits of the underlying claims." *AT &T Technologies, supra* at 649.

### C. EXCEPTIONS TO THE GENERAL RULE—*RONEY & CO v KASSAB* AND *SMITH BARNEY, INC v SARVER*

In opposition to the general federal rule favoring the determination of timeliness issues by an arbitrator, defendant cites two recent decisions from the Sixth Circuit Court of Appeals, *Roney & Co v Kassab*, 981 F2d 894 (CA 6, 1992), and *Smith Barney, Inc v Sarver*, 108 F3d 92 (CA 6, 1997), for the proposition that the court must determine whether a plaintiff's claims are barred by a contractual limitation period in the absence of clear and unmistakable evidence that the parties intended the question to be for the arbitrator. However, these cases are clearly distinguishable, involving contract language much different than that at issue here. *Roney & Co, supra* at 898, involved Rule 603 of the New York Stock Exchange, while *Smith Barney, supra* at 94, n 2, involved the identically worded §15 of the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Both provisions state that after six years from the events giving rise to the dispute have elapsed, the dispute "shall [not] be eligible for submission to arbitration . . . ."

In light of this "eligible for submission" language, it has been recognized that Rule 603 and §15 are unlike ordinary procedural limitation periods because they

indicate "that the parties intended to bar from arbitration disputes raised more than six years after the events giving rise to them." *PaineWebber Inc v Hartmann,* 921 F2d 507, 513 (CA 3, 1990); see also *Cogswell v Merrill Lynch, Pierce, Fenner & Smith Inc,* 78 F3d 474, 476 (CA 10, 1996). Furthermore, even given the unique character of the time-bar language of Rule 603 and § 15 at issue in *Roney & Co* and *Smith Barney,* we note that currently there is an even split among the federal appellate circuits regarding the question whether such language abrogates the general rule that timeliness is a procedural matter that must be submitted to the arbitrator.[7]

We conclude that the analysis contained in *Roney & Co* and *Smith Barney* is limited to the unique language of Rule 603 and § 15 and represents a specific exception to the general federal rule that timeliness issues must be submitted to an arbitrator.[8] Conse-

---

[7] By way of illustration, the Third, Sixth, Seventh, Tenth, and Eleventh Circuit Courts of Appeal have held that the application of the § 15 time-bar provision is for the court to decide. See, e.g., *Smith Barney, supra; Cogswell, supra* at 478-481; *Merrill Lynch, Pierce, Fenner & Smith, Inc v Cohen,* 62 F3d 381, 383-384 (CA 11, 1995); *Smith Barney Inc v Schell,* 53 F3d 807, 809 (CA 7, 1995); *PaineWebber Inc v Hofmann,* 984 F2d 1372, 1378 (CA 3, 1993). On the other hand, the First, Second, Fifth, Eighth, and Ninth Circuit Courts of Appeal have held that the application of §15 is reserved for the arbitrator. See, e.g., *PaineWebber Inc v Elahi,* 87 F3d 589, 599 (CA 1, 1996); *PaineWebber Inc v Bybyk,* 81 F3d 1193, 1196-1199 (CA 2, 1996); *Smith Barney Shearson, Inc v Boone,* 47 F3d 750, 753-754 (CA 5, 1995); *FSC Securities Corp v Freel,* 14 F3d 1310, 1312-1313 (CA 8, 1994); *O'Neel v Nat'l Ass'n of Securities Dealers, Inc,* 667 F2d 804, 807 (CA 9, 1982). As stated in the text, the language of Rule 603 is identical.

[8] This exception to the general rule is nevertheless consistent with the basic presumption of arbitrability, *AT & T Technologies, supra* at 650, and the principle that a court must enforce only the contractual arbitration agreement the parties have struck. *First Options, supra* at 947. As recognized in *General Drivers, Warehousemen & Helpers, Local Union 89 v Moog Louisville Warehouse,* 852 F2d 871 (CA 6, 1988), procedural matters (such as the timeliness of a claim) are presumptively resolved by an

quently, the decisions in *Roney & Co* and *Smith Barney* provide no guidance in our determination how the arbitration agreements in this case should be construed. We further conclude that the contractual language at issue in this case does not unmistakably remove the issue of the timeliness of a claim from the purview of the arbitrator and is thus not equivalent to the language that the Sixth Circuit Court of Appeals found in *Roney & Co* and *Smith Barney* to preclude submission of the issue to an arbitrator.

### III. CONCLUSION

Because the parties have included a broadly worded arbitration provision encompassing the core claim, we conclude that the timeliness of plaintiffs' claims is for the arbitrator to decide as a procedural matter. Accordingly, we reverse and remand this matter to the trial court with instructions to grant defendant's alternative motion to compel arbitration. We do not retain jurisdiction.

Reversed and remanded.

---

arbitrator *unless* the parties have specified otherwise in the arbitration agreement. See *id.* at 875.

In *General Drivers*, the parties' arbitration agreement provided that untimely grievances " 'shall not thereafter be arbitrable.' " *Id.* at 873. The Sixth Circuit Court of Appeals found that this language constituted "positive assurance" that the parties intended that the timeliness issue was for the court to decide as a condition precedent to arbitration. *Id.* at 874. As stated in the text, the language of the parties' arbitration agreements in this case contains no similar language of "positive assurance" that they intended to remove the question of timeliness of a claim from the arbitrator's consideration.