Sidney HIGH, personal representative of the Estate of Vunies B. High, deceased, Plaintiff,

v.

CAPITAL SENIOR LIVING PROPERTIES 2—HEATHERWOOD, INC., Defendants.

Case No. 08–13066.

United States District Court, E.D. Michigan, Southern Division.

Dec. 17, 2008.

Jules B. Olsman, Stephanie L. Arndt
Olsman, Mueller, Berkley, MI, Richard H.

Bernstein, Samuel I. Bernstein Assoc., Farmington Hills, MI, for Plaintiff.

Kenneth M. Mattson, Plunkett & Cooney, Detroit, MI, for Defendants.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DAVID M. LAWSON, District Judge.

Relying on an unsigned agreement containing arbitration and choice-of-forum clauses, the defendant has moved to dismiss this wrongful death case for failure to state a claim, want of subject-matter jurisdiction and improper venue. The parties presented oral argument on the motion in open court on December 11, 2008. Because the record casts considerable doubt over the question whether the plaintiff's decedent knowingly and intentionally waived her right to adjudicate disputes in court or assented to those terms in the defendant's contract, the motion to dismiss must be denied.

### I.

The case arises out of the death of the plaintiff's decedent, Vunies High, who at the time was a resident of the assisted-living facility operated by the defendant, Capital Senior Living Properties 2—Heatherwood, Inc. ("Heatherwood"), in Southfield, Michigan. According to the amended complaint, High was promised twenty-four-hour-a-day staffing and emergency call support at Heatherwood. At 10:30 a.m. on February 18, 2008, she was found frozen to death outside of the facility, with her face stuck to the ice on the ground. Her caregiver, Gloria Williams, claims to have placed High into bed on February, 17, 2008 at around 8:10 p.m., which means that sometime between 8:10 p.m. on that evening and 10:30 a.m. on the next day, High wandered outside without anybody ever noticing her exit the facility.

The defendant answered the complaint and raised in its affirmative defenses the claim that the Court lacks subject-matter jurisdiction because the parties agreed to arbitrate their dispute. The answer makes reference to a document entitled Heatherwood Resident Agreement. The Agreement contains an arbitration clause phrased as follows:

**ARBITRATION.** To the extent allowed by law, You and the Provider agree that, with regard to any dispute whatsoever between You, your agent, or Your legal representatives, heirs, executors and/or administrators or any other person acting on Your behalf and the Community, Provider or Provider's agents, ... including but not limited to, a Dispute pertaining to: (i) the interpretation and enforcement of this Agreement, the Attachments, and/or the Resident Handbook, including but not limited to, any dispute alleging breach of contract; (ii) the goods and services provided to You by the Provider and its employees; or (iii) the maintenance of the physical environment of the Community (including but not limited to the Premises), the Provider has the right, at the Provider's sole and unfettered option, to require that the Dispute be settled by arbitration, which shall be conducted at a location chosen by the Provider in accordance with, at Provider's election, either the rules of the American Arbitration Association or of the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The decision of the arbitrator shall be binding on both parties. Subject to the terms of this Agreement including the limitation of liability

provision, the award, cost and expenses of the arbitration shall be awarded at the discretion of the arbitrator. Notwithstanding the foregoing, the Provider maintains the right to institute an action with regard to any Dispute in any court of competent jurisdiction and **YOU HEREBY WAIVE YOUR RIGHT TO A TRIAL BY JURY IN SUCH A COURT PROCEEDING.**

Heatherwood Resident Agr. ¶ 7, at 11, Ex. 3, Pl.'s Response [dkt # 9].

The next paragraph of the agreement contains a waiver of trial by jury for actions that are not subject to arbitration by law. Agr. ¶ 8, at 11, Ex. 3, Pl.'s Response [dkt # 9].

A forum-selection clause included in the agreement restricts venue to the county in which the Community is located. It states:

**VENUE.** If any action is brought by You, Your family, Your legal representatives, heirs, executors or administrators, Your responsible party or Your estate, against the Community, its owner(s), its management or other agents, directors, officers, assigns or successors, venue will only be proper in the county in which the Community is located.

Heatherwood Resident Agr. ¶ 10, at 12, Ex. 3, Pl.'s Response [dkt # 9].

The last page of the Agreement contains places for names to be printed and signatures affixed. The Agreement in this case is fully signed by Heatherwood's representative, but neither the plaintiff's decedent nor a representative on her behalf signed it, although she apparently printed her name under the signature line.

The plaintiff explains that on January 19, 2002, Ms. High and her daughter, Lisa Wells, visited the defendant's assisted-living facility with the view to place then-eighty-five-year-old High there as a resi-dent. During that walk-in visit, Wells filled out a Resident Inquiry Card, on which she responded to a question about her mother's mental status with a phrase "some confusion." Resident Inquiry Card, Ex. 1, Pl.'s Response. The card indicates that at that time, High was in need of safety checks and assistance with administering the three types of medication she was on. Three days later, on January 22, 2002, the two women returned to the facility and completed the application for residency, with the move-in date scheduled for January 25, 2002.

On the date of the move-in, High and Wells were presented with the Heatherwood Resident Agreement. The defendant does not dispute the plaintiff's assertion that Ms. High did not sign the document, even though she may have "printed her name" on it. *See* Def.'s Reply [dkt # 10], at 1 Instead, the defendant argues that the Court should infer Ms. High's intention to be bound by the Agreement because she lived by its terms for seven years after printing her name on it, paid the rent, and received the services mentioned in it.

On December 23, 2007, Lisa Wells signed a Renewal Addendum, which extended the Heatherwood Resident Agreement for a one-year period and adjusted the rent. Also, on February 14, 2006, after the decedent had lived at the facility for four years, Kathy Ostrowski, the defendant's agent, contacted Lisa Wells about the concern that Ms. High could no longer maintain her own personal hygiene. As a result of that contact, Wells enrolled Ms. High into a program that, for an additional fee, would provide assistance with personal hygiene, including a twenty-four-hour-per-day staffing and an emergency call system and the "Personal Care Program," which involved regular safety checks, dressing and undressing, transportation within the

building itself, shower assistance, medication reminders, and other services consistent with those provided by assisted-living facilities. There is no documentation in the record, however, that Lisa Wells had the authority to sign contracts on behalf of Ms. High.

Sidney High, the personal representative of Vunies High's estate, commenced the present action on July 16, 2008. After answering the complaint, the defendant filed the present motion to dismiss for want of subject-matter jurisdiction premised on the arbitration clause in the unsigned Agreement.

## II.

■■■ A motion attacking the court's subject-matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004)). It appears that the defendant is proceeding under the first option. It has been said, however, that a motion to dismiss grounded on an arbitration clause is more properly brought under Rule 12(b)(6) than Rule 12(b)(1) because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction. *Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740 (W.D.Mich.2008) (citing *Liveware Publishing, Inc. v. Best Software, Inc.*, 252 F.Supp.2d 74, 78 (D.Del.2003); *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n. 1 (3d Cir.1991)).

■■■ The Court believes this is the better view, since the existence of an arbitration agreement does not undermine the authority of the Court to proceed. After all, under the Federal Arbitration Act, the Court retains the authority to stay a case pending arbitration and then enter judgment on the award afterward. *See* 9 U.S.C. §§ 3, 9. The Sixth Circuit has admonished courts to be more exacting when addressing challenges that are phrased as an attack on jurisdiction:

In two very recent decisions, the Supreme Court has admonished courts to use the term "jurisdiction" with more precision, describing the term as "a word of many, too many, meanings," *Kontrick v. Ryan*, 540 U.S. 443, 453, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). In *Kontrick*, a unanimous Court held that time requirements of Federal Rules of Bankruptcy Procedure 4004 and 9006 did not implicate subject-matter jurisdiction, but were instead "claim-processing rules." *Id.* at 455, 124 S.Ct. 906. Just over one year later, in *Eberhart v. United States*, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam), the Supreme Court similarly described Federal Rule of Criminal Procedure 33 with its time limitations as a nonjurisdictional "claim-processing rule." "Clarity would be facilitated," the Supreme Court remarked, "if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 405 (quoting *Kontrick*, 540 U.S. at 455, 124 S.Ct. 906). "Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation con-

duct...." *Kontrick*, 540 U.S. at 456, 124 S.Ct. 906.

*Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518–19 (6th Cir.2006).

■■■ Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.1996). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)).

■■■ Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008). "[A] court may accept 'matters outside the pleadings,' but in doing so it generally must treat the motion 'as one for summary judgment under Rule 56.'" *Ibid.* (citing Fed.R.Civ.P. 12(d)). However, "docu-

ments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.... In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–336 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

The plaintiff argues that the arbitration clause in this case should not be enforced because the Agreement in which it is contained is unsigned, its terms are unconscionable because there is no mutuality of obligation to arbitrate, no consideration supports that provision in the Agreement, there is no proof that the plaintiff's decedent intended to waive her rights to resolve her disputes in court, and the arbitration clause violates public policy. The plaintiff objects to the forum-selection clause on similar grounds.

The present motion requires the Court to apply the Federal Arbitration Act (FAA). That legislation was enacted in 1925, and then was reenacted and codified as Title 9 of the United States Code in 1947. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Congress's purpose in enacting the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Ibid.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The Act states that every written

provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA requires a federal court to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement. *See* 9 U.S.C. § 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568, 573 (6th Cir.2003) (observing that "any doubts regarding arbitrability must be resolved in favor of arbitration"). Supreme Court cases have found that these provisions "manifest a 'liberal federal policy favoring arbitration agreements.'" *EEOC,* 534 U.S. at 289, 122 S.Ct. 754.

■■■ This does not mean, however, that a federal court faced with an arbitration provision must find that it always governs the resolution of a dispute between parties or applies to the claims that they present. The language of the contract defines the scope of disputes subject to arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (stating that "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"). The language of the FAA and public policy operate in some cases to render an arbitration agreement unenforceable. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (finding that the FAA does not allow arbitration of employment disputes involving transportation workers); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,*

*Inc.,* 473 U.S. 614, 637 n. 19, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (observing that language in arbitration agreements that effectively deprives a claimant of statutory remedies violates public policy and is unenforceable). Resolution of these questions requires resort to both federal and state law. "In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally,' although the FAA preempts 'state laws applicable *only* to arbitration provisions.'" *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). "[S]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Id.* at 889 (quoting *Casarotto,* 517 U.S. at 687, 116 S.Ct. 1652). The parties agree that the law of the State of Michigan applies.

■■■ As a general rule, the enforceability of an arbitration clause depends on the validity of the contract in which it is contained. *Amtower v. William C. Roney & Co.,* 232 Mich.App. 226, 233–34, 590 N.W.2d 580, 583 (1998) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed so to submit.") (internal quotation marks and citations omitted). Forum selection clauses are subject to the same rule. *Offerdahl v. Silverstein,* 224 Mich.App. 417, 420, 569 N.W.2d 834, 836 (1997) ("A contractual forum-selection clause, though otherwise valid, may not be enforced against one not bound by the contract."). This basic requirement—the existence of an actual agreement to arbitrate—is the first of several determinations a district court must make before compelling arbitration. As

the Sixth Circuit explained, "first, [the district court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir.2003) (citation omitted).

 Under Michigan law, the elements of a valid contract are (1) parties competent to enter into a contract, (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich.App. 418, 422, 468 N.W.2d 58, 60 (1991). "In order to form a valid contract, there must be a meeting of the minds on all the material facts." *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich. App. 543, 548, 487 N.W.2d 499, 503 (1992). " 'Meeting of the minds' is a figure of speech for mutual assent." *Id.* at 548–49, 487 N.W.2d at 503. "A contract is made when both parties have executed or accepted it, and not before." *Id.* at 549, 487 N.W.2d at 503. The party seeking to enforce the contract has the burden to show the existence of the contract. *Ibid.*

 A principal point of contention in this case is whether Ms. High ever agreed to arbitration in the first place, since she never signed the document. The absence of a signature is not necessarily fatal to a finding of an agreement. Michigan law permits an inference that an offeree accepted the terms of the agreement when she signaled her assent through conduct. *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 213 Mich.App. 636, 640, 540 N.W.2d 777, 780 (1995) ("If an

offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct.") (citation omitted); *see also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (holding that under Tennessee law, the plaintiff's continued employment with the company constituted a valid acceptance of the agreement containing an arbitration clause, even though an employee never signed such an agreement). On the other hand, the absence of a signature deprives the defendant of a presumption that it otherwise might enjoy: that one who signs a written agreement is presumed to know the nature of the document and to understand its contents. *See Watts v. Polaczyk*, 242 Mich.App. 600, 604, 619 N.W.2d 714, 717 (2000). In the absence of such a presumption, it is difficult for the Court to conclude as a matter of law that the plaintiff assented to the arbitration and venue provisions in the Agreement, since there is no allegation or evidence that those provisions were ever discussed or that the plaintiff's decedent otherwise even knew of them.

The plaintiff also attacks the arbitration provisions on the grounds of lack of mutuality and lack of consideration. Citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir.2000), the plaintiffs contend that because the arbitration clause compels only the tenant to arbitrate and creates no corresponding obligation on Heatherwood, there is no mutuality of obligation, and therefore there is no consideration flowing from Heatherwood to the tenant to support an agreement to arbitrate. *Floss* does not provide much guidance here, however, because it dealt with a stand-alone arbitration agreement between the defendant's employees and a third-party provider of dispute resolution services. The *only* consideration for the employees' promise to submit their dispute to

arbitration was the provider's return promise to furnish an acceptable forum. But since the provider remained free to change the format of arbitration and had complete discretion over arbitration rules and procedures, the court found that the provider's "promise [was] illusory," "[t]he purported arbitration agreement therefore lack[ed] a mutuality of obligation," and "[w]ithout a mutuality of obligation, the agreement lack[ed] consideration and, accordingly, [did] not constitute an enforceable arbitration agreement." *Id.* at 315–16.

 In this case, the arbitration clause was contained in a contract that contained several promises by both sides. Under Michigan law, "[w]here there is no specific recitation of separate consideration for the [contractual provision], but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all of the promises is consideration for each one." *Hall v. Small*, 267 Mich.App. 330, 334, 705 N.W.2d 741, 743–4 (2005) (citing *Rowady v. K Mart Corp.*, 170 Mich.App. 54, 59, 428 N.W.2d 22, 25 (1988)). It is a fundamental principle of contract law that one consideration can support many promises. *See* 3 Williston on Contracts § 7:51 (4th ed.) ("In many contracts, there is more than one promise on a side. If each promise on one side is supported by a promise or performance allotted to it exclusively as its consideration, the contract is divisible."). The Sixth Circuit has rejected the argument that an arbitration clause requires a separate mutuality of consideration apart from the consideration supporting the rest of the contract. *See Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir.1989). The one-sided nature of the arbitration agreement in this case, although a factor to consider in determining

whether the plaintiff agreed to it, does not render it unenforceable as a matter of law.

 The plaintiff also argues that the arbitration clause is unconscionable because it is contained in a contract of adhesion. Michigan law suggests that in order for the contract to be considered unconscionable, both procedural and substantive unconscionability must be present. *Clark v. DaimlerChrysler Corp.*, 268 Mich.App. 138, 143–44, 706 N.W.2d 471, 474–75 (2005). Procedural unconscionability exists where the weaker party has no realistic alternative to acceptance of the term. *Clark*, 268 Mich.App. at 144, 706 N.W.2d at 475. Procedural unconscionability is present where the challenged provision is buried in the text of a document, appears in small font, or is not otherwise conspicuous. *Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 209 Mich.App. 104, 108, 530 N.W.2d 146, 149 (1995). Determining procedural unconscionability requires the court to focus on the "real and voluntary meeting of the minds" of the parties at the time that the contract was executed and consider factors such as: "(1) relative bargaining power; (2) age; (3) education; (4) intelligence; (5) business savvy and experience; (6) the drafter of the contract; and (7) whether the terms were explained to the "weaker" party." *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 266 (E.D.Mich. 1976). Although contracts of adhesion have greater potential of being found procedurally unconscionable, courts will not invalidate adhesion contracts as a matter of law as long as the challenged provision is reasonable. *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich.App. 118, 157, 596 N.W.2d 208, 226 (1999). Contracts of adhesion are "characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the sec-

ond party cannot obtain the desired product or service except by acquiescing in the form agreement." *Morris v. Metriyakool*, 418 Mich. 423, 440, 344 N.W.2d 736, 742 (1984) (declining to strike down as unconscionable agreements to arbitrate medical malpractice claims). However, a contract is not one of adhesion where an individual has an option to obtain the desired goods or services elsewhere. *Ibid.* Because there is no suggestion in the record that the plaintiff was pressured into acquiescing in the arbitration provision, or that she was unable to find assisted-living arrangements elsewhere, the present record does not permit a finding of unconscionability as a matter of law.

 In addition to establishing an enforceable contract under state law, a party seeking to compel arbitration also must show that the opposite party waived her right to a jury trial. *See Cooper v. MRM Investment Co.*, 367 F.3d 493, 507 (6th Cir.2004) (observing that "[i]f the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.") (internal quotations omitted). The issue of one's right to a jury trial, even where that right has been addressed through a contractual provision, is governed by federal and not state law. *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.1985).

 Where there is a clear, express waiver of the right to a jury trial, the party seeking to avoid that waiver must demonstrate that she did not knowingly and voluntarily agree to the provision. *Ibid.* In other cases, the courts' approach is fact-intensive. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381–83 (6th Cir.2005). In the arbitration context, the Sixth Circuit requires proof that the waiver was "knowing and voluntary." *Morrison v. Circuit City Stores,*

*Inc.*, 317 F.3d 646, 668 (6th Cir.2003) (*en banc*).

In evaluating whether a waiver has been knowingly and voluntarily executed, we look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Ibid.* (internal quotations and alterations omitted). Applying these factors in *Morrison,* the Court found that the waiver was enforceable against the plaintiff because "Morrison was a highly educated managerial employee who was capable of understanding the terms of the agreement," "the waiver ... was plain," and "Morrison had three days in which to withdraw her consent to the agreement, which advised applicants that they may wish to consult an attorney before signing it." *Ibid.*

 The law with respect to forum-selection clauses in the present context is similar. The defendant argues that by agreeing to sue in the county where the facility is located, i.e., Oakland County, the decedent waived her right to a federal forum because there is no federal courthouse located within Oakland County's boundaries. However, the Sixth Circuit has held that the waiver of the statutory right to remove a suit from state to federal court must be clear and unequivocal. *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir.1990).

 Turning to the case at hand, the task of this Court is to "carefully reconcile the liberal federal policy favoring arbitration agreements with the important rights created and protected by federal civil rights legislation." *Morrison*, 317 F.3d at 652–53 (internal quotation marks and cita-

tions omitted). Applying the factors laid out in *Morrison*, the Court must conclude on the present record that the arbitration clause contained in Heatherwood's pre-printed contract is not enforceable.

The first factor—Ms. High's experience, background and education—favors the plaintiff. According to the amended complaint, at the time of signing the contract, the plaintiff's decedent was taking several medications, she was confused, and perhaps suffered some dementia. The decedent was eighty-five years old when she was handed the document, and she required assistance with tasks of daily living. There is no evidence in the record indicating that Ms. High ever read the document or that anyone explained the effect of a waiver. The second factor—the amount of time the decedent had to consider the waiver, including the opportunity to consult an attorney—also augurs in favor of the plaintiff. It also appears that at no time during an initial visit were the decedent and her daughter told about the arbitration and venue provisions in the Agreement. They were handed the document after Ms. High already moved in. The arbitration clause is on page eleven of a thirteen-page document. It does not appear that Ms. High was given a copy of the Agreement prior to her residency there, which would have enabled her to consult with an attorney in the meantime.

The third *Morrison* factor does not favor the defendant. The language referring to arbitration is clear, but the Agreement never mentions that by agreeing to arbitration, the decedent agreed to waiver her right to a jury trial. In fact, waiver-of-right-to-jury language is used only in the context of Heatherwood *itself* electing to go to Court. The rest of the clause is rather cumbersome. There is nothing in the present record indicating that any employee of Heatherwood mentioned, much less explained, the significance of the arbitration or forum-selection provisions to her. Fourth, there is no separate consideration for the arbitration and forum-selection provisions, although that alone does not render the clauses invalid.

Other considerations counsel against finding the arbitration clause enforceable as well. The relative unequal bargaining positions of the parties, *see Chesterfield Exchange, LLC v. Sportsman's Warehouse, Inc.*, 528 F.Supp.2d 710, 715–15 (E.D.Mich.2007) (noting the fact that the parties were in equal bargaining position as one of the decisive factors in the analysis), the lack of discussion of the provision, Ms. High's obvious limitations, the unilateral nature of the arbitration obligation, and the context of presenting the Agreement in an elder-care facility, *see Howell v. NHC Healthcare–Fort Sanders, Inc.*, 109 S.W.3d 731, 735 (Tenn.Ct.App.2003), all weigh against a finding of a voluntary and consensual relinquishment of the right to resolve disputes in a federal court.

Because there is an absence of proof that the plaintiff's decedent signed the Agreement or otherwise assented to surrender her right to trial in a forum of her choice, the Court must conclude that the defendant has not established its affirmative defense premised on the want of subject-matter jurisdiction, and the plaintiff has stated a cognizable claim in this Court.

## III.

The Court finds that the defendant has not established a right to arbitration, and therefore its motion fails under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). At oral argument, however, defense counsel stated that he had concentrated most of his time reviewing the arbitration issue and asked for more time for discovery to address the merits of the case in the event his motion were denied. The

plaintiff had no objection. The Court will enter an order today amending the Case Management and Scheduling Order to enlarge the present deadlines.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt # 3] is **DENIED.**