*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED AUTOMOBILE AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION and UAW LOCAL UNION 1974 UNIT 4,

Plaintiffs-Appellees,

v

55TH CIRCUIT COURT, CLARE COUNTY, and GLADWIN COUNTY,

Defendants-Appellants.

UNPUBLISHED
May 11, 2023

No. 361366
Gladwin Circuit Court
LC No. 21-011027-CK

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendants appeal by right the trial court's order granting plaintiffs' motion for summary disposition. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Kari Gallo was employed by defendants as the "Head Enforcement Officer" for the family division of defendant 55th Circuit Court; that court serves defendants Clare and Gladwin counties, which are the funding units for the court. Plaintiffs are affiliated labor unions, of which Gallo was a member. Plaintiffs and defendant 55th Circuit Court are parties to a collective bargaining agreement (CBA),[1] which refers to plaintiffs collectively as "the Union" and includes provisions governing grievance procedures and arbitration.

---

[1] Defendants rely upon (and attach to their brief on appeal) an earlier version of the CBA that was effective in fiscal years 2008 through 2010. However, that version of the CBA does not differ in material respects from the version of the CBA that was in effect at the time of the events underlying this case.

Section 6.0 of the CBA, which is entitled "Arbitration Request," states in relevant part:

> The Union may request arbitration of any unresolved grievance by giving written notice to the Chief Judge, or his/her designee, of its intent to arbitrate within twenty-five (25) calendar days following receipt of the Employer's disposition in Step 3 of the Grievance Procedure. . . .   If arbitration is not so requested within these time limits, the matter shall be considered withdrawn by the Union.  All requests for arbitration must be in writing, sent by certified mail, return receipt requested, or delivered personally to the Chief Judge, or his/her designee, with a copy submitted by Untied [sic, United] States Mail. . . .

Section 6.1 of the CBA, which is entitled "Selection of Arbitrator," states in relevant part, "If a timely request for arbitration is filed by the Union, the parties to this Agreement shall select by mutual agreement on one [sic, one] (1) Arbitrator who shall decide the matter. . . ."  Section 6.2 of the CBA, which is entitled "Arbitrator's Powers," states in relevant part:

> The Arbitrator's powers shall be limited to the application and interpretation of this Agreement as written, and he/she shall be governed at all times wholly by the terms of this Agreement.  The Arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement . . . .  Further the Arbitrator shall not be empowered to consider any question or matter outside this Agreement. . . .

Gallo was discharged from her position in January 2021, and she then filed a written grievance protesting her discharge.  Defendants held a hearing on Gallo's grievance on February 8, 2021, and sent Gallo a letter on February 19, 2021 informing her that her termination had been upheld.  On April 21, 2021, a representative of plaintiffs notified defendants via email that plaintiffs intended to seek arbitration regarding Gallo's grievance and discharge.  On April 28, 2021, defendants notified plaintiffs that the request for arbitration under the CBA had been withdrawn, because plaintiffs did not request arbitration within 25 calendar days of defendant's decision to uphold Gallo's termination and did not request arbitration in writing sent by certified mail or delivered personally to the Chief Judge of the 55th Circuit Court with a copy by United States mail.

Plaintiffs filed suit against defendants to compel arbitration and for breaching the CBA by refusing to arbitrate; it subsequently filed a motion for summary disposition under MCR 2.116(C)(10). Plaintiffs argued that the dispute regarding the timeliness and method of plaintiffs' request for arbitration raised procedural questions for the arbitrator to resolve, whereas defendants argued that they were questions for the court.  The trial court found that there was no "exceptional language within the [CBA] that would preclude the arbitrator from the standard practice of arbitrators making calls on these procedural matters."  Accordingly, the trial court granted plaintiffs' motion for summary disposition[2] and ordered defendants to submit Gallo's grievance to arbitration "and adhere to the arbitration provisions in the parties' contract."  This appeal followed.

---

[2] The trial court had earlier denied defendants' motion for summary disposition raising the same issues.

## II. STANDARD OF REVIEW

We review de novo questions of law, including the existence and enforceability of an arbitration agreement. *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 394; 886 NW2d 906 (2016). "Whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language." *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023), slip op at 3 (citation omitted). We also review de novo a decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

## III. ANALYSIS

There is no dispute that the nature of the grievance in this case is such as could properly be submitted to arbitration under the CBA. Defendants maintain, however, that plaintiffs did not properly or timely request arbitration under the CBA, and that the matter was therefore withdrawn and no longer arbitrable. Defendants argue that the language of the CBA provides that the threshold issue of whether plaintiffs' request for arbitration was timely (and correctly) submitted was one for the trial court, rather than the arbitrator, to decide. We disagree; however, we note that the threshold issues of whether plaintiffs timely and correctly invoked arbitration under the CBA remain to be decided by the arbitrator *before* the arbitrator becomes empowered to reach the merits of Gallo's grievance.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Bienenstock & Assoc, Inc v Lowry*, 314 Mich App 508, 515; 887 NW2d 237 (2016) (quotation marks and citation omitted). "Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group, PLC v Republic of Argentina*, 572 US 25, 33; 134 S Ct 1198; 188 L Ed 2d 220 (2014). "[T]he parties to an arbitration agreement can provide that certain issues be determined by the court if they so specify in their contract." *Amtower v William C Roney & Co*, 232 Mich App 226, 233-234; 590 NW2d 580 (1998). "Consequently, the determination whether the issue of timeliness must be decided by the arbitrator or a court inexorably becomes a question of contract interpretation." *Id*. at 234. "When deciding whether the parties agreed to arbitrate a certain matter, courts should ordinarily apply basic state-law principles that govern the formation of contracts." *Id*. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Id*. (quotation marks, citation, and emphasis omitted). "Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning." *Id*. (quotation marks and citation omitted). However, "[w]hen the issue presented is close and there is doubt about whether an issue is a gateway question for the court or a procedural one for the arbitrator, we should resolve that doubt in favor of arbitration." *Bienenstock*, 314 Mich App at 517 (quotation marks and citation omitted).

"If the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Group, PLC*, 572 US at 34. "On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.' " *Id*. "These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause

-3-

in a concededly binding contract applies to a particular type of controversy.' " *Id.*, quoting *Howsam v Dean Witter Reynolds, Inc*, 537 US 79, 84; 123 S Ct 588; 154 L Ed 2d 491 (2002). "On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group, PLC*, 572 US at 34. "These procedural matters include claims of waiver, delay, or a like defense to arbitrability." *Id.* at 35 (quotation marks and citation omitted). "And they include the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *Id.* (quotation marks and citation omitted).

In this case, an arbitration agreement exists between the parties, and the CBA grants the arbitrator the power to resolve matters related to the application and interpretation of the CBA. The CBA includes language identifying a time frame within which plaintiffs must request arbitration—"within twenty-five (25) calendar days following receipt of the Employer's disposition in Step 3 of the Grievance Procedure." If plaintiffs fail to request arbitration before the expiration of that time limit, the matter is considered withdrawn. The CBA also provides that "[a]ll requests for arbitration must be in writing, sent by certified mail, return receipt requested, or delivered personally to the Chief Judge, or his/her designee, with a copy submitted by Untied [sic, United] States Mail." Additionally, the CBA states that *if* plaintiffs file a timely request for arbitration, the parties will select an arbitrator.

When considered in light of the presumption in favor of arbitrability, we conclude that the CBA's provisions granting the arbitrator the authority to resolve matters related to the application and interpretation of the CBA, indicate that the arbitrator must decide the timeliness and procedural issues. See *Amtower*, 232 Mich App at 237-238. Timeliness issues such as this often require a resolution of disputed fact questions regarding when a cause of action accrued. See *id.* at 236. Furthermore, Michigan's Uniform Arbitration Act provides that an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled. See MCL 691.1686(3).

Additionally, although defendants argue that the language in the CBA indicates that an arbitrator cannot even be selected unless a timely request for arbitration has been made, the actual language of the CBA is not so explicit. Section 6.1 of the CBA specifies how an arbitrator is to be selected *if a request for arbitration is timely filed*; it does not explicitly state that an arbitrator may not be selected *unless* a request for arbitration is timely filed, or that issues regarding the timeliness of a request for arbitration are to be decided by a court, not an arbitrator. See *Howsam*, 537 US at 81. In *Howsam*, the United States Supreme Court considered whether a court or an arbitrator should determine whether a claim for arbitration was timely filed where the Code of Arbitration Procedure for the National Association of Securities Dealers (NASD) stated that "no dispute 'shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute.' " *Id.* (citations omitted). The Supreme Court ultimately held that "the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge," notwithstanding the language stating that untimely disputes would be ineligible for "submission to arbitration." *Id.* at 85. Furthermore, the Court stated "that the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called 'questions of arbitrability.' " *Id.*

We similarly conclude in this case that the issue of whether procedural preconditions for arbitration of a grievance were correctly followed is a question for the arbitrator. We note,

however, that the issue of whether Gallo's grievance was correctly considered "withdrawn" under the CBA is still to be decided; that is, the trial court's order may not be read as directing that arbitration proceed on the merits of Gallo's grievance without first analyzing the timeliness and other procedural issues raised by defendants and without a finding that the procedural prerequisites to arbitration were satisfied. In other words, the trial court's order did not establish that Gallo's grievance *was* timely and correctly filed; it only determined that those procedural issues should be decided by an arbitrator. See *Howsam*, 537 US at 81.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates