KAMALNATH v MERCY MEMORIAL HOSPITAL CORPORATION

Docket No. 128108. Submitted April 8, 1992, at Detroit. Decided June 15, 1992, at 9:15 A.M. Leave to appeal sought.

Jacintha F. Kamalnath and Prakash J. Kamalnath, for himself and as next friend of Anthea J. Kamalnath, brought an action in the Monroe Circuit Court against Mercy Memorial Hospital Corporation, alleging breach of contract, wrongful discharge, employment discrimination based on gender and race, fraud, misrepresentation, and intentional infliction of emotional distress after the defendant refused to allow Jacintha F. Kamalnath to continue her medical practice at its clinic. The court, Michael W. LaBeau, J., granted the defendant summary disposition of all claims and denied a subsequent motion for rehearing, in which the plaintiffs first asserted a claim of estoppel. The plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court properly dismissed the claim of breach of contract after it determined that there was no written and signed contract between the defendant and Dr. Kamalnath and that she had commenced her services at the clinic despite the absence of a contract.

2. The claims of quantum meruit and equitable estoppel are without merit because the plaintiff received compensation in the amount specified in the defendant's contractual offers.

3. The trial court correctly dismissed the employment discrimination claims because the plaintiffs offered no evidence to refute the defendant's contention that Dr. Kamalnath's poor performance was the reason for discontinuing her services.

4. The trial court properly dismissed the fraudulent misrepresentation claim because the plaintiffs failed to respond to the defendant's denial of fraudulent intent. Also, the alleged misrepresentations concerned promises of future action or matters of opinion, neither of which may serve as the basis of an action for fraud.

5. The trial court properly dismissed the claim of intentional infliction of emotional distress because the plaintiffs failed to allege outrageous conduct by the defendant or a breach of duty distinct from contract.

Affirmed.

*Hooper, Hathaway, Price, Beuche & Wallace* (by *David J. Hutchinson*), for the plaintiffs.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *William A. Tanoury, Susan Healy Zitterman,* and *Linda M. Garbarino*), for the defendant.

Before: WEAVER, P.J., and SULLIVAN and CORRIGAN, JJ.

CORRIGAN, J. Plaintiffs appeal a grant of summary disposition of their complaint of breach of contract, wrongful discharge, employment discrimination, fraud, misrepresentation, and intentional infliction of emotional distress. We affirm.

In 1986, defendant decided to open an outpatient family practice clinic in Petersburg in Monroe County. Defendant retained a recruiter to identify a private family practitioner who brought plaintiff Jacintha Kamalnath and defendant together.

In June 1986, plaintiff, an endocrinologist, first visited the area and discussed the clinic plan with John Iacoangeli, defendant's director of planning and development. Plaintiff was unfamiliar with Monroe County and also lacked experience in the "business" aspects of medical practice. Iacoangeli allegedly stated that the hospital would assist plaintiff with marketing.

On June 20, 1986, Iacoangeli wrote plaintiff as follows:

> Thank you for visiting this facility and touring the communities of Monroe and Petersburg on Saturday. As discussed at our meeting, I stated that I would present for your consideration an offer relative to the start-up of a physician office in Petersburg and your retention as a private family practitioner. The following offer is subject to receipt and review of your curriculum vitea [sic].

1. The hospital will provide a net salary guarantee before taxes for one year in an amount not to exceed Sixty Thousand [$60,000] Dollars. The salary guarantee is determined by subtracting office and equipment rental, insurance, including medical liability, salaries, payroll taxes and workers compensation for office staff, office supplies and medical records, dues to medical organizations (AMA, Michigan State Medical Society), fees associated with normal business operations (legal and accounting), and telephone.

2. Underwrite the rental of the physician office for the first year of operation.

3. Provide a Fifty-Thousand [$50,000] Dollar line of credit to be used for operational and professional expenses. The interest rate for using these funds will be seven percent. This line of credit will be available for two years.

4. The hospital will assist you with your relocation costs to a home within Monroe County at a cost not to exceed $1,500.

As I mentioned, the salary guarantee is associated with the primary care aspect of the Petersburg Physician Office. Consultation and other fees associated with your speciality in Endocrinology are separate.

This offer is based on your availability to serve the Petersburg market area as a primary care physician and maintain regular office hours four [4] full days and two [2] half-days a week.

If you have any further questions, please feel free to contact me.

/s/ John R. Iacoangeli

Plaintiff did not accept this written offer. Instead, she suggested various changes and additions, principally an increase in the term from one year to three years and a provision that the hospital handle marketing.

On June 30, 1986, Iacoangeli sent plaintiff a second letter, which provided in part:

It was a pleasure speaking with you again regarding the physician opportunity in Petersburg. As I mentioned, the following revisions to my June 20 letter, are outlined as follows:

1. The net salary-guarantee before taxes in an amount not to exceed Sixty Thousand [$60,000] dollars will be offered for three [3] years, subject to an annual performance review.

2. In addition to those expenses that are subtracted from gross receipts as outlined previously, medical education relating to primary care has been added.

3. Cost of relocation will be increased to a cost not to exceed $2,750.

4. The hospital administration will assist in providing coverage for the office when you are on vacation.

Also, I have enclosed an application for appointment to the Medical Staff. Please complete this as soon as possible. . . .

Defendant subsequently prepared several drafts of a proposed contract, but none of them proved satisfactory to plaintiff, who testified: "[T]here were so many things that was [sic] not acceptable, I saw it [the contract] as not acceptable and that's the whole thing."

Plaintiff, however, moved to Petersburg and began work, although she had no signed contract and the clinic was not yet completed. Various problems then developed with equipping and staffing the clinic. Defendant allegedly did not provide promised equipment, office staff, and advertising and did not timely bill the patients. In addition, although the hospital arranged a line of credit, plaintiff allegedly was not informed that the "line of credit" was actually a personal loan.[1]

---

[1] Apparently, plaintiff and her husband did not repay the loan when it became due and the bank brought suit against them. They counterclaimed, alleging fraud and conspiracy. The outcome of that action is not known to this Court.

The Petersburg clinic was not as successful as the parties had hoped. Relations between them deteriorated. A white male physician, who is allegedly less qualified than plaintiff, was added to the clinic staff. In November 1987, defendant formally notified plaintiff to vacate the clinic after a breakdown in their relationship.

In early 1988, plaintiff filed suit, claiming breach of contract, wrongful discharge, sex and race discrimination in employment, fraud and misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress. Defendant sought summary disposition pursuant to MCR 2.116(C)(8) and (10), asserting that the statute of frauds barred plaintiff's contract claim, that plaintiff's sex and race discrimination claims had no factual basis, that the alleged fraud and misrepresentation involved matters of opinion and future promises, that the claim of intentional infliction of emotional distress lacked any basis, and that plaintiff was an independent contractor who could not sue for wrongful discharge. The motion was supported by a detailed affidavit from John Iacoangeli.

Plaintiff's response brief lacked any citations to authority. The support filed by plaintiff's counsel consisted of an "Affidavit of Unavailability of Affidavits," the material portions of which read:

> 2. The Motion was filed while I was on vacation, and my schedule did not permit me to have the necessary communications with potential witnesses that would have been necessary prerequisites to the preparation of specific affidavits.
>
> 3. The persons from whom affidavits might have been obtained would include Plaintiffs, who would have been able to support everything contained in the Complaint, as well as the testimony of Dr. Omana Menon relating to damages, the testimony

of Dr. Bruce Feyz and Dr. Amba Krishnan regarding the discrimination claim.[2]

The court granted defendant's motion, finding that the June 20 and June 30, 1986, letters were mere offers outside the statute of frauds, that plaintiff was not defendant's employee, that no genuine issue of fact existed as to the discrimination claims, that the fraud and misrepresentation claims involved promises and matters of opinion with no evidence of intent to deceive, and that no "outrageous conduct" supported plaintiff's claim of intentional infliction of emotional distress.

Plaintiff sought rehearing, rearguing her earlier points and newly claiming promissory and equitable estoppel. She also sought for the first time recovery in quantum meruit. The court denied the motion for rehearing.

## I. THERE WAS NO ENFORCEABLE CONTRACT BETWEEN THE PARTIES.

It is hornbook law that a valid contract requires a "meeting of the minds" on all the essential terms.

> In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind. [*Stanton v Dachille,* 186 Mich App 247, 256; 463 NW2d 479 (1990), citing *Heritage Broadcasting Co v Wilson Communications, Inc,* 170 Mich App 812, 818; 428 NW2d 784 (1988).]

"Meeting of the minds" is a figure of speech for

---

[2] Plaintiffs' counsel did not initiate any discovery proceedings between filing suit and the filing of defendant's motion. We express no opinion about the wisdom of this strategy.

mutual assent. *Goldman v Century Ins Co,* 354 Mich 528, 534; 93 NW2d 240 (1958). See also, e.g., *Stark v Kent Products, Inc,* 62 Mich App 546, 548; 233 NW2d 643 (1975).

An offer is a unilateral declaration of intention, and is not a contract. *Western Michigan Univ Bd of Trustees v Slavin,* 381 Mich 23, 31; 158 NW2d 884 (1968); *Eastern Michigan Univ Bd of Control v Burgess,* 45 Mich App 183, 187; 206 NW2d 256 (1973). A contract is made when both parties have executed or accepted it, and not before. *Brown v Considine,* 108 Mich App 504, 507; 310 NW2d 441 (1981), citing *Holder v Aultman, Miller & Co,* 169 US 81, 89; 18 S Ct 269; 42 L Ed 669 (1898). A counterproposition is not an acceptance. *Harper Bldg Co v Kaplan,* 332 Mich 651, 655; 52 NW2d 536 (1952). Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract. *Kirchhoff v Morris,* 282 Mich 90, 95; 275 NW 778 (1937).

A mere expression of intention does not make a binding contract, *Hammel v Foor,* 359 Mich 392, 400; 102 NW2d 196 (1960):

> The burden is on plaintiffs to show the existence of the contract sought to be enforced, and no presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists.

In this case, the parties did not have a sufficient "meeting of the minds" regarding the essential terms of the contract. Plaintiff rejected the June 20 offer, as the June 30 offer makes plain. Plaintiff herself admitted that she did not approve any of the proposed contracts after her move to Petersburg. Important differences remained between the

parties as to basic contractual duties such as the responsibility for certain major expenses. The parties had exchanged a series of offers and counteroffers, not an offer and an acceptance.

Even if the June 20 and 30 letters were considered a binding contract, defendant reserved the right to terminate plaintiff. She had no guarantee of continuation after the first year. The June 30 letter expressly provided that "[t]he net salary-guarantee . . . will be offered for three [3] years, *subject to an annual performance review*." [Emphasis supplied.] Plaintiff's performance was subjected to an annual performance review and found deficient. Iacoangeli averred that defendant terminated plaintiff's employment "based on her poor performance in operating the Petersburg Clinic in terms of her office hours, patient relations, patient charges, accounting and general management responsibilities." As noted, plaintiff never countered the Iacoangeli affidavit.

Further, under the statute of frauds, MCL 566.132(a); MSA 26.922(a), "[a]n agreement that, by its terms, is not to be performed within 1 year from the making thereof" must be in writing and "signed by the party to be charged." The proposed contract was for three years. The only document signed by defendant's agent that refers to a three-year term is the June 30 letter. That letter, however, is not a contract; the author refers to "revisions to my June 20 letter." The June 20 letter was merely "an offer relative to the start-up of a physician office in Petersburg and your retention as a private family practitioner." Thus, plaintiff's claim is defeated by the statute of frauds. Plaintiff cannot avoid the effect of the statute by claiming partial performance of the terms of the purported contract. In Michigan, the partial-performance doctrine does not apply to employment contracts

for more than one year. *McMath v Ford Motor Co,* 77 Mich App 721, 725; 259 NW2d 140 (1977).

Plaintiff's alternative argument, seeking compensation under some other theory, was presented to the court below only on plaintiff's motion for rehearing. The trial court did not rule on it. Generally, questions not ruled on below cannot be presented to or considered by a reviewing court, absent a miscarriage of justice. *Bajis v Dearborn,* 151 Mich App 533, 536; 391 NW2d 401 (1986); *Petrus v Dickinson Co Bd of Comm'rs,* 184 Mich App 282, 288; 457 NW2d 359 (1990). We see no miscarriage of justice here.

Nevertheless, we find plaintiff's alternative argument to have no merit. Because she *has* been compensated, she cannot seek recovery in quantum meruit. She was paid for her services at the clinic in 1986 and 1987 at the proposed contract rate of $60,000 a year. The doctrine of quantum meruit allows a party to recover the reasonable value of services rendered. A contract, though void under the statute of frauds, may be admissible to show the value placed on a plaintiff's services by the parties. *Ordon v Johnson,* 346 Mich 38, 49; 77 NW2d 377 (1956). Plaintiff is not entitled to any additional payment under a quantum meruit analysis.

Nor does the doctrine of equitable estoppel support plaintiff. "[A]s an equitable remedy, [estoppel] is employed to alleviate an unjust result of strict adherence to established legal principles." *Ass'n of Hebrew Teachers v Jewish Welfare Federation,* 62 Mich App 54, 60; 233 NW2d 184 (1975). Defendant has not been unjustly enriched at plaintiff's expense.

Even assuming a three-year contract for plaintiff's services, plaintiff's contractual rate of compensation ($60,000 a year) was identical to what

she was actually paid. Plaintiff's apparent suggestion that clinic revenues increased because of her activity lacks any merit since her compensation was not tied to clinic income. She would not have received any more than $60,000 a year from defendant had she remained at the Petersburg clinic longer than she did. Had defendant refused to pay plaintiff at all for services rendered or paid her at a lower rate, the case might be different. But plaintiff herself admitted that she was paid appropriately.

Moreover, to support a claim of estoppel, a promise must be definite and clear. *McMath, supra* at 726, citing *Ass'n of Hebrew Teachers, supra* at 59. The promises upon which plaintiff allegedly relied are certainly not definite and clear. The only promise mentioned in the complaint was defendant's "promise to use business expertise and experience." The doctrine of estoppel should be applied only where the facts are unquestionable and the wrong to be prevented undoubted. *Commercial Union Ins Co v Medical Protective Co,* 136 Mich App 412, 421; 356 NW2d 648 (1984), rev'd in part on other grounds 426 Mich 109; 393 NW2d 479 (1986). This vague promise does not qualify.

## II. PLAINTIFF'S REMAINING CLAIMS DO NOT WARRANT REVERSAL.

Plaintiff's remaining allegations require minimal discussion.

### A. EMPLOYMENT DISCRIMINATION

Plaintiff alleges violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, because defendant engaged a white male physician to replace her, a female of Indian origin. MCL

37.2202; MSA 3.548(202) prohibits "discrimina-
t[ion] . . . because of . . . national origin . . . [or]
sex." Plaintiff failed to adduce any evidence what-
soever to support this claim in response to defen-
dant's properly supported motion for summary
disposition. As noted, Iacoangeli averred that he
terminated defendant's relationship with plaintiff
solely on the basis of her poor performance.

> When a motion under subrule (C)(10) is made
> and supported as provided in this rule, *an adverse
> party may not rest upon the mere allegations or
> denials of his or her pleading, but must, by affida-
> vits or as otherwise provided in this rule, set forth
> specific facts showing that there is a genuine issue
> for trial.* If the adverse party does not so respond,
> judgment, if appropriate, shall be entered against
> him or her. [Emphasis supplied; MCR 2.116(G)(4).]

Plaintiff did not come forward with any facts at
all. Instead, counsel presented the previously de-
scribed "Affidavit of Unavailability of Affidavits."
A mere promise to offer factual support at trial is
insufficient. *McCart v J Walter Thompson USA,
Inc,* 437 Mich 109, 115, n 4; 469 NW2d 284 (1991).
Summary disposition was properly granted pursu-
ant to MCR 2.116(G)(4).

Further, plaintiff's employment discrimination
claim fails because plaintiff was not defendant's
employee. The trial court properly found that
plaintiff was an independent contractor, not an
employee.[3]

> An independent contractor is one who, carrying
> on an independent business, contracts to do work
> without being subject to the right of control by the
> employer as to the method of work but only as to
> the result to be accomplished. [*Parham v Preferred*

---

[3] Plaintiff has not responded to this finding in her brief on appeal.

*Risk Mut Ins Co,* 124 Mich App 618, 622-623; 335
NW2d 106 (1983), citing *Marchand v Russell,* 257
Mich 96; 241 NW 209 (1932).]

The proposed agreement renders plaintiff an
independent contractor rather than an employee.
The clinic staff were to be plaintiff's employees,
not defendant's. Plaintiff would be required to pay
all expenses from clinic receipts, including insur-
ance, supplies, most business expenses, transporta-
tion, and depreciation. Plaintiff would also be lia-
ble for rent to defendant. We find no error.

### B. FRAUD AND MISREPRESENTATION

We affirm the lower court's dismissal of the
counts of fraud and misrepresentation because
plaintiff did not comply with MCR 2.116(G)(4). She
failed to produce any affidavits or other evidence
to counter Iacoangeli's affidavit denying any intent
to defraud or mislead plaintiff.

Moreover, an action for fraudulent misrepresen-
tation must be predicated upon a statement relat-
ing to a past or an existing fact. Future promises
cannot constitute actionable fraud. *State Bank of
Standish v Curry,* 190 Mich App 616, 623; 476
NW2d 635 (1991), citing *Hi-Way Motor Co v Int'l
Harvester Co,* 398 Mich 330, 336; 247 NW2d 813
(1976). The actions plaintiff complained of princi-
pally relate either to promises of future action
(e.g., the division of expenses between plaintiff and
defendant) or to matters of opinion (e.g., defen-
dant's business expertise). Although the demo-
graphic makeup of Monroe County is a factual
matter, plaintiff failed to oppose Iacoangeli's affida-
vit that he had no intent to defraud her with
respect to that fact; as for claimed fraud and
misrepresentation about the value of the home

plaintiff purchased, plaintiff had the opportunity to inspect it. Representations as to property value are mere expressions of opinion, especially where plaintiff can inspect the property before purchasing it. *Sutton v Benjamin,* 231 Mich 153, 155; 203 NW 667 (1925). See also, e.g., *Cole Lakes, Inc v Linder,* 99 Mich App 496, 505; 297 NW2d 918 (1980).

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, the trial court properly granted summary disposition of the claim of intentional infliction of emotional distress. A plaintiff must show "extreme and outrageous" conduct. See *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602-604; 374 NW2d 905 (1985), citing Restatement Torts, 2d, § 46, p 71. Further, in a contractual setting, a tort action must rest on a breach of duty distinct from contract. *Roberts, supra* at 603-604. Plaintiff nowhere specifically alleged conduct so extreme or outrageous as to establish liability in tort.

Affirmed. Costs to defendant.