*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEEP HARBOR CONDOMINIUM
ASSOCIATION,

UNPUBLISHED
July 13, 2023

Plaintiff-Appellant,

RODNEY SCHOLTEN, JILL GOODWIN, SUE
FILKINS, ANTHONY KUPRES, JEFF SQUIRE,
and DAVID HISCOCK,

Plaintiffs-Appellees,

and

ROBERT SANFORD,

Plaintiff,

v

No. 360185
Allegan Circuit Court
LC No. 2018-060393-CK

MARINE ADVENTURE, LLC, and DEEP
HARBOR 3, LLC,

Defendants-Appellants,

and

RICHARD STEPHENS, JOHN SISSON, JEFF
VANDERLIP, JOSHUA OTTING, BILL BALE,
PAUL BALOGH, RONNIE DAVIS, JAMES
BOLAND, ETHEL VISSER, HERB LANG,
DOMENIC FRANCONI, and BRIAN
BEDNARCYK, also known as BRIAN
BEDNARCZYK,

Defendants-Appellees.

DEEP HARBOR CONDOMINIUM
ASSOCIATION,

        Plaintiff/Counterdefendant-Appellant,

v

SUSAN FILKINS, JEFFREY SQUIRE, JILL
GOODWIN, and RODNEY SCHOLTEN,

        Defendants/Counterplaintiffs-
        Appellees,

and

ANTHONY KUPRES and DAVID HISCOCK,

        Counterplaintiffs-Appellees,

and

ARLENE MAE NOBBS TRUST, LAURA KILEY,
BRAD BROEKHUIS, and MARK MEALEY,

        Counterplaintiffs,

and

RICHARD STEPHEN, also known as RICHARD
STEPHENS, JOHN SISSON, JEFF VANDERLIP,
JOSHUA OTTING, RONNIE DAVIS, PAUL
BALOGH, and BILL BALE,

        Counterdefendants-Appellees.

No. 362576
Allegan Circuit Court
LC No. 2019-061263-CH

MARINE ADVENTURE LLC,

        Plaintiff/Counterdefendant-Appellant,

v

DEEP HARBOR CONDOMINIUM
ASSOCIATION,

        Defendant/Counterplaintiff-Appellant,

No. 362577
Allegan Circuit Court
LC No. 2015-054872-CZ

and

ETHEL VISSER, JAMES BOLAND, DOMENIC
FRANCENI, also known as DOMENIC FRANCONI,
HERB LANG, BRIAN BEDNARCZYK, JEFF
VANDERLIP, and JOHN SISSON,

        Defendants-Appellees,

and

WILLIAM NOBBS,

        Defendant.

---

Before:  RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

According to MCR 2.507(G), an enforceable settlement of a pending case can take the form of an agreement made "in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."  In the digital age, an exchange of e-mails is often presented as such a settlement, but it isn't quite that simple.  As illustrated by our recent decision in *Dabish v Gayar*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 358727), the mere exchange of e-mails by opposing counsel with an eye toward resolution of a case does not a settlement make.  Here, in a host of consolidated appeals on leave granted,[1] Deep Harbor Condominium Association, Marine Adventure, LLC, and Deep Harbor 3, LLC ask us to rule, once again, that an e-mail exchange falls short of an enforceable settlement agreement.  Because no enforceable settlement in writing exists on the record before us, we shall reverse the trial court's contrary ruling and remand these cases for further proceedings on the merits.

## I.  FACTUAL BACKGROUND

This dispute involves three underlying lawsuits, filed in 2015, 2018, and 2019 respectively, that were eventually consolidated in the trial court in 2021.  In broad terms, the lawsuits relate to the Deep Harbor condominium project in Saugatuck, Michigan, which consists of approximately 90 individual units for "boat mooring and/or dockage" with access to the Kalamazoo River.  The condominium project is organized under the condominium act, MCL 559.101 *et seq*.  Deep Harbor

---

[1] *Deep Harbor Condo Ass'n v Marine Adventure LLC*, unpublished order of the Court of Appeals, entered August 25, 2022 (Docket No. 360185); *Deep Harbor Condo Ass'n v Susan Filkins*, unpublished order of the Court of Appeals, entered August 25, 2022 (Docket No. 362576); *Marine Adventure LLC v Deep Harbor Condo Ass'n*, unpublished order of the Court of Appeals, entered August 25, 2022 (Docket No. 362577).

Condominium Association (the Association) is a nonprofit corporation regulated by the nonprofit corporation act, MCL 450.2101 *et seq.*, and charged with administering, operating, managing, and maintaining the condominium project.

The three suits involve a plethora of parties, claims, and counterclaims, the specific details of which are not particularly relevant to the resolution of the issues before this Court on this appeal. Generally, we note that the underlying disputes related to the condominium project began in 2015 when Marine Adventure, LLC, bought 49 units in the condominium project and subsequently filed the 2015 lawsuit against the Association and its board of directors, including Ethel Visser, James Boland, Domenic Franconi, Herb Lang, Brian Bednarczyk, Jeff Vanderlip, John Sisson, and William Nobbs.[2] That action was settled in 2016. After the settlement and the entry of a stipulated order dismissing the 2015 case, Marine Adventure transferred its units in the condominium project to 49 separate limited-liability companies (collectively, the Deep Harbor LLCs). In the trial court, at the times relevant to this appeal, attorney David Zessin represented Marine Adventure and the Deep Harbor LLCs.

In 2018, two separate factions emerged in the condominium project to claim that they were the new board of directors. One faction included Rodney Scholten, Jill Goodwin, Susan Filkins, Robert Sanford,[3] and Anthony Kupres (collectively, the Scholten board). They all claimed to have been elected on June 30, 2018. That faction, joined by a handful of other co-owners in the project, have been represented in this litigation by attorney Carl Gabrielse in the trial court and on appeal. The other faction in the condominium project consisted of Sisson, Vanderlip, Richard Stephens,[4] Joshua Otting, Bill Bale, Paul Balogh, and Ronnie Davis (collectively, the Sisson board). They claimed to have been elected on August 18, 2018. That faction, as well as former board members involved in the 2015 litigation, were represented in the trial court by attorney Kay Rivest Butler.

Attorney Gabrielse filed the second lower-court case in 2018 on behalf of the Association under the direction of the Scholten board against Marine Adventures, the Deep Harbor LLCs, the former board members involved in the 2015 litigation, and the Sisson board. The complaint in the second case contained five counts challenging the terms and validity of the settlement agreement from the 2015 lawsuit and the validity of the purported election of the Sisson board. Most of those claims were eventually dismissed.

Attorney Zessin filed the third lawsuit related to the condominium project in May 2019 on behalf of the Association—under the direction of the Sisson board—against four of the plaintiffs in the 2018 action, i.e., Filkins, Squire, Goodwin, and Scholten. The 2019 lawsuit challenged the legitimacy of the Scholten board, contending that the Scholten board did not receive the requisite number of votes at the June 30, 2018 meeting. Briefly summarized, the 2019 complaint sought to quiet title to one of the condominium units, to have funds belonging to the Association returned to it, and to enjoin the Scholten board from attempting to collect dues to cover attorney fees incurred

---

[2] Nobbs later passed away, so he was dismissed from the case.

[3] In 2019, Sanford transferred his unit in the condominium project to Bradley Broekhuis. He was later dismissed from the case because he was no longer a member of the Association.

[4] Stephens is also the principal behind Marine Adventures and the Deep Harbor LLCs.

by the Scholten board. The four defendants named in the 2019 suit counterclaimed, and additional counterplaintiffs and counterdefendants were added to the 2019 lawsuit.

In April 2021, the trial court entered a stipulated order consolidating the three lower-court cases. In the 2015 suit, Gabrielse had moved for relief from judgment on behalf of the Association under the direction of the Scholten board, and individual co-owners had also moved to join in the 2015 litigation. Zessin responded on behalf of the Association—with the Association purportedly under the direction of the Sisson board—by opposing the motion for relief from judgment and the joinder of nonparties.

Following consolidation of the three cases, in the context of this convoluted web of claims and counterclaims by a multitude of parties, attorneys Gabrielse, Zessin, and Butler exchanged a series of e-mails on July 14, 2021, and July 21, 2021, about a potential settlement. Whether those e-mails resulted in an enforceable settlement is the subject of much dispute and the issue presently before this Court. In September 2021, Gabrielse, purporting to represent the "co-owners," moved to enforce a settlement agreement, claiming that the July 14 and 21 e-mails represented a settlement enforceable under MCR 2.507(G), the terms of which included the Deep Harbor LLCs selling their units to Gabrielse's clients with a global release of all claims by all parties. But the other parties opposed the motion, contending that the e-mails represented mere negotiations and not a settlement enforceable under MCR 2.507(G).

The trial court granted the motion to enforce the settlement agreement, concluding that the e-mails constituted an enforceable agreement under MCR 2.507(G). The trial court reasoned that the settlement was initially proposed by Gabrielse and accepted by Butler and Zessin on behalf of their respective clients. The trial court did not, however, enter a settlement agreement or releases because the parties had not agreed to the specific terms to include in those documents. Rather, the trial court ordered that the parties should submit proposed settlement documents and the trial court would hold a hearing "to determine the specific terms and details of the sale, appropriate releases, and closing dates." These appeals followed.

## II. LEGAL ANALYSIS

On appeal, appellants argue that the trial court erred by granting the motion to enforce the purported settlement agreement.[5] Appellants contend that the e-mails in this case do not evince a meeting of the minds on all essential terms and instead represent, at most, mere negotiations—i.e., unaccepted offers and counteroffers—among the parties. We agree.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). A party seeking enforcement of a contract bears the burden

---

[5] The appellants are, as noted, Marine Adventure, the Deep Harbor LLCs, and the Association. The Sisson board members and former board members are not appellants, but they have filed a brief on appeal to support appellants' position.

of showing the existence of the contract. *Id*. "[N]o presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists." *Id*. (quotation marks and citation omitted).

A contract requires mutual assent or a meeting of the minds on all essential terms, *Kloian*, 273 Mich App at 453, so "[a] mere expression of intention does not make a binding contract . . . ." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 549; 487 NW2d 499 (1992). A "meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. (quotation marks and citation omitted). "A counter proposition is not an acceptance." *Id*. "Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract." *Id*. Instead, a contract requires an offer and then an acceptance of that offer that is both "unambiguous and in strict conformance with the offer[.]" *Kloian*, 273 Mich App at 452. When a purported acceptance "includes conditions or differing terms, it is not a valid acceptance—it is a counteroffer and will not bind the parties." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014). An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997) (quotation marks and citation omitted).

Also relevant to this case, an agreement to settle pending litigation is only enforceable if it complies with MCR 2.507(G), which states:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

This rule is in the nature of a statute of frauds, *Kloian*, 273 Mich App at 456, and it functions "to take the guesswork out of settling a pending lawsuit." *Dabish*, ___ Mich App at ___; slip op at 4. Under MCR 2.507(G), a settlement must exist in a form that indisputably reflects a final agreement of the parties. *Id*. In *Dabish*, which addressed a purported settlement agreement contained in an exchange of e-mails, this Court determined that the fact that the trial court had to order the plaintiff to sign the settlement documents lent credence to the contention that the parties never reached an agreement. *Id*. And the "subsequent battling over terms of the purported settlement . . . lays bare the danger in declaring a settlement without indisputable proof of the terms on which the parties settled." *Id*.

In this case, no agreement was set forth on the record in open court. Instead, the purported settlement agreement is set forth in a chain of e-mails among Gabrielse, Zessin, and Butler sent on July 14, 2021, and July 21, 2021. E-mails can form a contract in compliance with MCR 2.507(G), provided that the e-mails evince a meeting of the minds and that the e-mails are subscribed by the party against whom the agreement is offered or the party's attorney. See, e.g., *Kloian*, 273 Mich App at 453. But when an e-mail chain is purported to reflect a settlement agreement, the e-mails must contain indisputable proof that the e-mails were a final agreement of the parties and the terms on which the parties settled. *Dabish*, ___ Mich App at ___; slip op at 4. The e-mails in this case do not, however, contain such indisputable proof.

The crucial inquiry in this analysis is whether there was an offer followed by an acceptance that was unambiguous and in strict conformity with the offer. *Kloian*, 273 Mich App at 452. The analysis here is complicated by the fact that there were three attorneys involved in the settlement negotiations, and so two sets of parties had to unambiguously, and in strict conformity, accept the offer of the third set of parties. The e-mail negotiations started on July 14, 2021, when Gabrielse sent an e-mail to Zessin and Butler offering to settle the case on the following terms: (1) purchase of the Deep Harbor LLCs' 49 units by his clients; (2) a purchase price of $375,000; (3) payment and closing within 30 days of a signed agreement, which was defined as mid-August; (4) dismissal of the litigation; and (5) a stipulation to schedule a 2021 board meeting for some time after closing. Zessin responded affirmatively, stating the proposal was "acceptable" to the Deep Harbor LLCs. Butler, however, responded with a question: "And the settlement agreement would include a full and complete release of my clients, correct?" In other words, Butler added a term, i.e., a release, to the negotiations. Gabrielse replied, indicating that the settlement agreement would "contain full releases going both ways." Butler replied that the proposal was "acceptable" to her clients. This release provision was not, however, part of Gabrielse's original offer. After Butler raised the issue, Zessin did not respond or agree to this request for inclusion of a release. Gabrielse concluded the e-mail chain on July 14, 2021, by stating he would "begin working on a settlement for review."

When the discussion ended on July 14, 2021, there was clearly not a meeting of the minds among all the parties on all material terms. The releases were a material term added by Butler in response to Gabrielse, but Zessin never responded or approved a release of claims. He certainly did not agree to a full and complete release of claims "going both ways." Gabrielse's closing e-mail stating that he would begin "working on a settlement for review," particularly when coupled with Zessin's lack of a response to the release discussion, reflects that negotiations were ongoing. Indeed, appellees concede that the July 14, 2021 e-mail chain did not constitute a contract because the issue of "global releases" remained an unresolved "sticking point" in the negotiations.

One week later, on July 21, 2021, Gabrielse initiated another chain of e-mail negotiations, opening the renewed discussion by writing:

> I met with my clients last evening down at the Deep Harbor marina. They have decided that any settlement with or purchase of units from the Deep Harbor LLCs *must include a global settlement of all litigation and a release of all claims between all parties, including the Association*. My clients are not interested in a two-party deal where they purchase all of Stephens' units only to find themselves in the middle of continuing litigation.
>
> Additionally, *I can tell you that I will be scrutinizing the release paragraph and almost certainly expanding its scope out of an abundance of caution to ensure that any settlement is truly a clean break*, as it should be.
>
> Once you've talked with your client, please let me know whether there is any path forward on a settlement and purchase. If not, we'll have to pick up where we left off with the litigation. [Emphasis added.]

This e-mail from Gabrielse did not constitute an offer. To the contrary, it appears that he expected someone else to propose release terms that he planned to review, and he would "almost

certainly" expand those terms in "scope." Sending an e-mail that invites other parties to make an offer proposing release terms for his review does not constitute an "offer" because it did not contain a bargain to which the other parties were invited to assent. See *Eerdmans*, 226 Mich App at 364. At most, Gabrielse invited additional discussion, asking whether "there is any path forward on a settlement and purchase." In response, Zessin promised to pass "this along" to Stephens and share "his response" with the other attorneys.

Butler then sent an e-mail, making an offer as follows:

Travelers Insurance has advised me that it will contribute $25,000 to settlement in exchange for Stephens/Deep Harbor LLCs' full and complete release (including the Association and Board members). The settlement agreement previously circulated would be revised accordingly. *This offer is only open until 5 pm on Thursday, July 22nd. The settlement agreement would need to be signed by that time.* [Emphasis added.]

The record does not contain any response from Gabrielse to Butler's e-mail, but Zessin responded that same day as follows:

The llc's will sign a settlement agreement which resolves all pending claims, dismisses all litigation and releases all parties for the amount offered. Please update the settlement agreement accordingly. We will also need a real estate purchase agreement for the sale of the 49 units. The terms of the agreement for the sale and purchase of his 49 units will include a purchase price of $375,000 and allocate reasonable and customary closing costs. The llc's will pay for one owners title policy. If there are multiple purchasers, the cost of additional owners policies will be the responsibility of the purchasers. Please provide the names of the purchaser/purchasers and I will start working on this agreement. Thx, z

Butler's e-mail clearly constituted an offer, which neither Gabrielse nor Zessin accepted. Butler presented terms for a "full and complete" release, offered the Deep Harbor LLCs additional money, and provided a timing condition for the offer, requiring a signed settlement agreement by 5:00 p.m. on July 22, 2021. Gabrielse never responded, meaning that the July 22 deadline passed without any response from Gabrielse, at which point the offer lapsed without the parties reaching any global settlement. See *Pakideh*, 213 Mich App at 640. The subsequent motion to enforce the purported settlement agreement, filed on September 2, 2021, suggests that Gabrielse's clients were amenable to Butler's proposal. Any such actions, however, took place long after the offer lapsed, and "[a]n offeree cannot accept, either through words or deeds, an offer that has lapsed." *Id*. at 641. The formation of a contract is judged by an objective standard. *Kamalnath*, 194 Mich App at 548. Therefore, even if at least one of the attorneys involved in the settlement negotiations subjectively believed that a settlement agreement had been reached, that has no bearing on this Court's analysis. See *id*.

Also, Butler's offer specifically required not only verbal acceptance or an e-mail response, but also a signed settlement agreement by 5:00 p.m. on July 22. Although Zessin responded via e-mail before the deadline, no settlement agreement was signed by that time by any of the parties.

Indeed, a negotiated settlement agreement has never been signed by anyone involved in this case. Pursuant to the terms of Butler's offer, the settlement agreement had to be signed by 5:00 p.m. on July 22. When the deadline passed without any party signing an agreement, the offer expired. See *Pakideh*, 213 Mich App at 640-641.

Additionally, even setting aside the issue of whether the offer expired before acceptance in the time and manner required by Butler's offer, Zessin's e-mail response proposed differing terms, which addressed the allocation of expenses related to closing costs and title-insurance policies and limited the Deep Harbor LLCs' responsibility for title policies. If an alleged acceptance "includes conditions or differing terms, it is not a valid acceptance—it is a counteroffer and will not bind the parties." *Huntington Nat'l Bank*, 305 Mich App at 508. Neither Butler nor Gabrielse responded to Zessin's counteroffer to accept his proposed terms, and the parties never signed any settlement agreement. Moreover, the fact that the trial court felt it needed to hold a hearing "to determine the specific terms and details of the sale, appropriate releases, and closing dates" supports appellants' claim that a settlement agreement was not reached. Indeed, this need for further court intervention to resolve many terms of the settlement agreement "lays bare the danger in declaring a settlement without indisputable proof of the terms on which the parties settled." *Dabish*, ___ Mich App at ___; slip op at 4. This ongoing "battling over the terms of the purported settlement" reveals that there was not a settlement in this case for purposes of MCR 2.507(G). See *id*.

Although the attorneys' exchange of e-mails evinces discussions and negotiations of terms for a potential settlement agreement, such negotiations do not represent a meeting of the minds on all essential terms as required to form a contract. See *Kamalnath*, 194 Mich App at 550. Applying fundamental principles of contract formation, the parties did not arrive at an agreement, and there is no contract to enforce. Consequently, the trial court erred by granting the motion to enforce the settlement agreement.[6] Accordingly, we must reverse the trial-court order granting the motion to enforce the settlement agreement and remand the case for further proceedings on the merits

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates

---

[6] Appellants have presented additional arguments on appeal, asserting, for example, that time was of the essence in the contract and that the contract, therefore, cannot be enforced because timely performance is now impossible. Appellants also contend that the trial court enforced a settlement that materially differed from the terms discussed by the parties. Additionally, appellants insist that there is no settlement to enforce because the negotiations contemplated a global settlement of all claims and a release of all parties, including the Association, but the attorneys could not—or did not—agree to the release of the Association's claims, and the Association did not otherwise agree to the settlement. Given our resolution of the other issues on appeal, we find it unnecessary to address these additional issues.