*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN C. LEBLANC,

        Plaintiff-Appellant,

v

JOSEPH W. LEBLANC, Individually and as Trustee
of the JOSEPH W. LEBLANC TRUST, JMS
INVESTMENTS, LLC, and JMS 12TH STREET,
LLC,

        Defendants-Appellees.

UNPUBLISHED
January 18, 2024

No. 362760
Allegan Circuit Court
LC No. 2021-064743-CZ

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Plaintiff, Steven LeBlanc, appeals as of right the trial court's order dismissing his claims
with prejudice following a bench trial. We affirm.

## I. FACTUAL BACKGROUND

This case arose from a dispute concerning plaintiff's ownership interest in two companies:
JMS, Investments, LLC, and JMS 12th Street, LLC. In 2002, defendant Joseph LeBlanc and his
two sons, plaintiff and Mark LeBlanc, formed JMS Investments, LLC. Joseph owned a 50%
interest in JMS Investments, either personally or through his trust, the Joseph W. LeBlanc Trust,
and plaintiff and Mark each owned a 25% interest. The primary purpose of JMS Investments was
to own and lease a warehouse located in Wayland, Michigan. Thereafter, plaintiff, Joseph, and
Mark formed JMS 12th Street, LLC, which owned a property located across the street from the
warehouse.

Plaintiff filed this action for denial of company records, breach of contract, and minority-
member oppression against JMS Investments and JMS 12th Street, as well as against his father,
Joseph LeBlanc, individually and as managing partner of the two companies. Defendants asserted
that plaintiff held no interest in the companies to pursue these claims because he redeemed or sold
back his interests to the companies in 2018. The trial court held a bench trial to determine whether

-1-

plaintiff retained any interests in the companies, and it ruled that plaintiff and Joseph entered into a valid oral agreement for plaintiff to redeem his interests in the companies.

## II. STANDARD OF REVIEW

"This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). We also review de novo a trial court's determination about the existence and interpretation of a contract. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

## III. ANALYSIS

Plaintiff argues that the trial court erred by finding that plaintiff and defendants had an oral agreement for plaintiff to sell his interests in the two companies. We disagree.

As an initial matter, we decline to consider evidence outside of the trial record that plaintiff offers to support his claims on appeal. A party may not expand the record on appeal, and a reviewing court will not consider evidence that was not admitted during the trial. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

To prove the existence of a valid contract, evidence must establish "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 453. " 'A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.' " *Id*. at 454, quoting *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543; 548, 487 NW2d 499 (1992). As noted, we review a trial court's findings of fact for clear error. *Alan Custom Homes, Inc*, 256 Mich App at 512. Clear error exists when, "after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). A reviewing Court should give "particular deference to the trial court's superior position to determine witness credibility." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014).

The trial court did not clearly err when it concluded that, as a factual matter, plaintiff and Joseph orally agreed that plaintiff would sell back his interests to the companies for $250,000. The record reflects that, in May 2018, plaintiff asked Joseph to buy plaintiff's interests in the companies because plaintiff needed income and he had a substantial personal tax debt. Although plaintiff denied that he agreed to sell his interests for $250,000, and he claimed to believe that he retained a 25% interest in both JMS Investments and JMS 12th Street at the time of trial, the trial court did not find plaintiff's testimony to be credible. Joseph testified that plaintiff approached him in May 2018 and that plaintiff agreed to sell his interests in the companies for $250,000.

The following facts are undisputed: on May 4, 2018, JMS Investments began to issue weekly checks to plaintiff; the first check bore a statement that identified it as the first payment for plaintiff's buyout; plaintiff knew that the checks were issued to buy out his company interests;

and, over a period of four years, plaintiff picked up and cashed more than 200 of the buyout checks, including additional amounts that he requested would be deducted from the amount owed to him for the redemption of his interests. Specifically, between May 4, 2018 and April 5, 2022, plaintiff received $123,435.05 from JMS Investments in 224 payments directly to plaintiff on the buyout, four payments to various governmental entities for property taxes owed by plaintiff, two doctors' payments and one mortgage payment. Tax documents mailed to plaintiff's home also showed that he owned no interest in the companies after he and Joseph entered into the agreement.

Because we give particular deference to the trial court's determination of credibility, and because ample evidence in the record supports the trial court's conclusions, the trial court properly concluded that clear and convincing evidence established the existence of an oral contract.

We hold that the trial court correctly ruled that the parties entered a valid oral contract. See *Innovation Ventures*, 499 Mich at 508. Plaintiff and Joseph were competent to form a contract. For the legal consideration, the parties agreed that the companies would pay plaintiff in exchange for the return of his interest in the companies. The parties' agreements imposed obligations on each party because the companies had to pay plaintiff and plaintiff had to give up his ownership interests in the companies. Although the parties debated at trial whether they agreed on the purchase price, the facts supported the trial court's conclusion that plaintiff and Joseph agreed on the purchase price of $250,000, as evidenced by Joseph's testimony, plaintiff's admission that he asked to be bought out, plaintiff's conduct in cashing buyout checks pursuant to Joseph's offer to buy back his interests for $250,000, and plaintiff's request in December 2018 for more money in addition to the $250,000.

Plaintiff also argues that the oral agreement was void under the statute of frauds because it was not in writing and the contract could not be performed within one year pursuant to MCL 566.132(1)(a). We review de novo whether the statute of frauds applies to a contract. *Zaher v Miotke*, 300 Mich App 132, 140; 832 NW2d 266 (2013).

Generally, "the role of the judiciary is to apply the statute of frauds as written, without second-guessing the wisdom of the Legislature." *Crown Technology Park v D & N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000). However, our Supreme Court has also stated:

> If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will regard the contract as removed from the operation of the statute. The contract to be enforced must be established by clear and convincing evidence. [*Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942) (citations omitted).]

In this case, the trial court correctly ruled that clear and convincing evidence established that plaintiff and Joseph orally agreed that plaintiff could redeem his interests in the companies for $250,000. No writing memorialized this agreement. The parties planned that the companies would pay plaintiff $500 a week until the total purchase price was paid. This suggests that the contract would not be performed within one year because it would take more than nine years for defendants to complete their portion of the agreement.

However, our courts have held that the determination whether MCL 566.132(1)(a) applies depends upon "whether the contract is capable of performance within one year of the agreement." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 533; 473 NW2d 652 (1991). For that reason, the inquiry is not whether Joseph issued weekly checks to plaintiff over a period of several years because "[t]he mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that if, by any possibility, it is capable of being completed within a year, it is not within the statute . . . ." *Id.* (quotation marks and citations omitted).

In this case, the companies could have paid plaintiff for his interests within one year. The parties agreed that the companies would pay plaintiff in weekly $500 checks, but on several occasions, defendants paid plaintiff additional amounts when he needed more money for his residential property taxes or for other expenses. Nothing in the record suggests that the parties agreed to a fixed period for payment, but the weekly checks appeared to have suited both parties, with additional amounts paid as needed. Nothing in the record, however, suggests that defendants were incapable of paying plaintiff within one year. For that reason, because a possibility existed that the contract could have been completed within a year, the statute of frauds does not void the contract.

Further, the trial court correctly ruled that the doctrine of equitable estoppel prevented plaintiff from later claiming the contract void under the statute of frauds. As this Court explained in *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 526-527; 644 NW2d 765 (2002):

> The doctrine of equitable estoppel has been applied to defeat the defense of the statute of frauds where a party has acted to his detriment in reliance on oral agreements or where application of the doctrine of equitable estoppel is necessitated by the facts. Estoppel questions should be presented to the jury where factual issues exist regarding whether a party is estopped from raising the statute of frauds defense against a party who reasonably and justifiably relied on an oral agreement. [Citations omitted.]

In this case, defendants paid plaintiff more than $100,000 over a period of four years by the time of trial, and as the trial court specifically stated, the other company members, Joseph and Mark, shouldered all tax liabilities for the companies once the payments began. Defendants reasonably and justifiably relied on the oral agreement by regularly paying plaintiff. Defendants made those payments for no other reasons than that plaintiff wished to remove himself from any interest in the companies and so that plaintiff could have a regular income. Plaintiff did not pay taxes for or participate in the running of the companies after he made the oral agreement with Joseph. Further, for four years plaintiff cashed the weekly checks while knowing that they were for the buyout. For these reasons, it would be inequitable to permit plaintiff to void the contract under the statute of frauds in order to claim a continued ownership interest in the companies.

We also reject plaintiff's assertion that the trial court erred when it held that his agreement with Joseph did not violate the companies' operating agreements. Section 7.1 of the operating agreements restricts transfers of member's interests without the written consent of other members:

Except as otherwise specifically provided in this Operating Agreement, a Member shall not have the right to sell, assign, pledge, create a security interest in, exchange or otherwise transfer, with or without consideration, all or any part of its Membership Interest without the prior written consent of all Members. Members are specifically allowed to transfer all or any portion of their Membership Interest to such Member's spouse or to a trust for the benefit of such Member or such Member's spouse without being subject to any restrictions contained in this Operating Agreement. In addition, the restrictions on transfer of Membership Interests shall not apply to transfers among the Members.

The parties agree that Joseph did not obtain the written consent of Mark, the other owner of JMS Investments and JMS 12th Street, before he made the oral agreement with plaintiff for the companies to buy back his interests. However, we agree with the trial court that § 7.1 applies to third-party transfers and does not apply to the agreement between plaintiff and Joseph for the companies to buy out or redeem plaintiff's interests. The companies were paying plaintiff directly for his return of his interests, which is not the kind of sale or transfer that § 7.1 restricts.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney